UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

KAREEM HASSAN, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

FORDHAM UNIVERSITY,

Defendant.

Case No.1:20-CV-03265 (LTS) (BCM)

-------------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

JACKSON LEWIS P.C.
44 SOUTH BROADWAY, 14TH FLOOR
WHITE PLAINS, NEW YORK 10601
(914) 872-8060

200 CONNELL DRIVE, SUITE 2000
BERKELEY HEIGHTS, NJ 07922
(908) 795 5200
BY: JONATHAN M. KOZAK, ESQ.
GREGORY T. ALVAREZ, ESQ.*
ISAAC J. BURKER, ESQ.
MICHAEL J. NESSE, ESQ.*

*ATTORNEYS FOR DEFENDANT*

*Notice of Appearance to be filed

# TABLE OF CONTENTS

**Page #**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ..........................................................................................................3

ARGUMENT ...............................................................................................................6

I.      LEGAL STANDARD............................................................................................6

II.     NEW YORK COURTS RECOGNIZE AN APPROPRIATELY HIGH BAR FOR
       CLAIMS AGAINST EDUCATIONAL INSTITUTIONS BASED ON ALLEGED
       BREACH OF CONTACT OR OTHER RELATED CLAIMS IMPLICATING
       AN INSTITUTION'S  ACADEMIC JUDGMENT. ...............................................7

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF
       CONTRACT………………….………………………………………….......9

       A.  Plaintiff's Breach of Contract Cause of Action Must Be Dismissed Because
            Plaintiff Fails To Adequately Plead The Existence Of Any Promise To
            Provide Only In-Person Classes……………………………………………9

       B.  Plaintiff Fails To Plead Breach Of Any Express Or Implied Promise To
            Provide In-Person Classes……………………………………………14

       C.  Plaintiff's Breach Of Contract Cause Of Action Must Be Dismissed
            Because Plaintiff Did Not Suffer Any Form Of Cognizable Damages……,..16

       D.  Plaintiff's Breach of Contract Cause of Action Must Be Dismissed Due To
            The Doctrine of Acceptance…………………………………...…………18

       E.  Plaintiff's Breach Of Contract Cause Of Action Must Be Dismissed Because
            Fordham Is Excused From Any Obligation To Provide In-Person Classes
            From March 2020 Through The Remainder Of The Semester Due To
            Impossibility Of Performance…………………………………………..19

IV.   PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR UNJUST
       ENRICHMENT…..………………………………………………………...20

       A.  Plaintiff's Unjust Enrichment Cause Of Action Must Be Dismissed As
            Duplicative Of His Breach Of Contract Cause Of Action…………………..20

       B.  Plaintiff Cannot Establish The Elements Of An Unjust Enrichment Cause
            Of Action…………………………………………………………………22

V.      PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR
        CONVERSION……………………………………………………….....23

VI.     PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR MONEY
        HAD AND RECEIVED……………………………….…………………………...24

CONCLUSION……………………………………………….. …………………..25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Ansari v. New York Univ.,
  1997 U.S. Dist. LEXIS 6863 (S.D.N.Y. May 12, 1997)............................................................8

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)...................................................................................................................7

Babiker v. Ross Univ. Sch. of Med.,
  2000 U.S. Dist. LEXIS 6921 (S.D.N.Y. May 19, 2000) *aff'd* 86 F. App'x 457
  (2d Cir. 2004)...........................................................................................................................14

Baldridge v. State,
  293 A.D.2d 941 (3d Dept. 2002) ............................................................................................10

Barnet v. Drawbridge Special Opportunities Fund LP,
  2014 U.S. Dist. LEXIS 124410 (S.D.N.Y. Sept. 5, 2014).....................................................23

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007).......................................................................................................6, 7, 17

Benex LC v. First Data Much. Servs. Corp.,
  2016 U.S. Dist. LEXIS 33849 (E.D.N.Y. Mar. 16, 2016) .....................................................23

Benham v. eCommission Solutions, LLC,
  118 A.D.3d 605 (1st Dept. 2014)............................................................................................21

Berman v. Sugo LLC,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008).....................................................................................23

Bolt Elec. v. City of N.Y.,
  53 F.3d 465 (2d Cir. 1995).........................................................................................................6

Broder v. Cablevision Sys. Corp.,
  418 F.3d 187 (2d Cir. 2005).....................................................................................................10

Chambers v. Time Warner, Inc.,
  282 F.3d 147 (2d Cir. 2002).......................................................................................................4

Chase Manhattan Bank v. Traffic Stream Infrastructure,
  52 Fed. App'x 528 (2d Cir. 2002)...........................................................................................19

Chira v. Columbia University in New York City,
    289 F. Supp. 2d 477 (S.D.N.Y. 2003) ................................................................10

Clark v. Daby,
    300 A.D.2d 732 (3d Dept. 2002) ......................................................................22

Corsello v Verizon N.Y., Inc.,
    18 N.Y.3d 777 (2012) .......................................................................................20

Ebert v. Holiday Inn,
    628 Fed. Appx. 21 (2d Cir. 2015) ....................................................................19

Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) ..............................................................25

Emerson Elec. Co. v. Asset Mgmt. Assocs.,
    2012 U.S. Dist. LEXIS 39442 (E.D.N.Y. March 20, 2012) ..............................18

Fernbach, LLC v. Capital & Guarantee Inc.,
    2009 U.S. Dist. LEXIS 71564 (S.D.N.Y. Aug. 12, 2009) ................................25

Gally v. Columbia Univ.,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998) .........................................8, 9, 10, 14, 21, 24

Gebhardt v. Allspect, Inc.,
    96 F. Supp. 2d 331 (S.D.N.Y. 2000) ..................................................................6

Gertler v. Goodgold,
    107 A.D.2d 481 (1st Dept. 1985) .....................................................................12

Getko Grp., Inc. v. Amica Mut. Ins. Co.,
    2003 U.S. Dist. LEXIS 19238 (S.D.N.Y. Oct. 28, 2003) .................................17

Glob. Entm't, Inc. v. N.Y. Tel. Co.,
    2000 U.S. Dist. LEXIS 16038 (S.D.N.Y. Oct. 31, 2000) .................................24

Harris v. City of N.Y.,
    186 F.3d 243 (2d Cir. 1999) ...............................................................................6

Harsco Corp. v. Segui,
    91 F.3d 337 (2d Cir. 1996) .................................................................................9

Jeffers v American Univ. of Antigua,
    125 A.D.3d 440 (1st Dept. 2015) .....................................................................21

Jones v. Trustees of Union College,
    92 A.D.3d 997 (3d Dept. 2012) .......................................................................13

Kaye v. Grossman,
    202 F.3d 611 (2d Cir. 2000).........................................................................22

L. N. Jackson & Co. v. Royal Norwegian Gov't,
    177 F.2d 694 (2d Cir. 1949)........................................................................19

Maas v. Cornell Univ.,
    94 N.Y.2d 87 (1999) ...................................................................................7

Matzan v. Eastman Kodak Co.,
    134 A.D.2d 863 (4th Dept. 1987) ...............................................................23

Menaker v. Hofstra Univ.,
    935 F.3d 20 (2d Cir. 2019)....................................................................12, 13

Moreno-Godoy v. Gallet Dreyer & Berkey, LLP,
    2016 U.S. Dist. LEXIS 137843 (S.D.N.Y. Oct. 4, 2016) ...........................25

Nat'l Westminster Bank PLC v. Grant Prideco, Inc.,
    261 F. Supp. 2d 265 (S.D.N.Y. 2003)........................................................25

Olsson v. Board of Higher Education,
    49 N.Y.2d 408 (1980) .....................................................................10, 14, 16

Orange County Choppers, Inc. v. Olaes Enters.,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007).........................................................22

Paladino v. Adelphi Univ.,
    89 A.D.2d 85 (2d Dept. 1982) ................................................................8, 14

Pani v. Empire Blue Cross Blue Shield,
    152 F.3d 67 (2d Cir. 1998)...........................................................................4

Paramount Film Distrib. Corp. v. State,
    30 N.Y.2d 415 (1972) .................................................................................22

Paynter v. N.Y. Univ.,
    64 Misc. 2d 226 (N.Y. Civ. Ct. 1970).........................................................15

Pearson v. Walden Univ.,
    144 F. Supp. 3d 503 (S.D.N.Y. 2015)....................................................13, 14

Pell v. Trustees of Columbia Univ.,
    1998 U.S. Dist. LEXIS 407 (S.D.N.Y., Jan. 15, 1998)................................14

Sang Lan v. Aol Time Warner, Inc.,
    2012 U.S. Dist. LEXIS 187899 (S.D.N.Y. Apr. 30, 2013)...........................18

Scarola Ellis LLP v. Padeh,
    116 A.D.3d 609 (1st. Dept. 2014) ........................................................20

Sirohi v. Lee,
    222 A.D.2d 222 (1st Dept. 1995) .........................................................8

Subaru Distribs. Corp. v. Subaru of Am., Inc.,
    425 F.3d 119 (2d Cir. 2005).................................................................7

Sun Gold, Corp. v. Stillman,
    95 A.D.3d 668 (1st Dept. 2012) ..........................................................24

Teachers Ins. & Annuity Ass'n v. Wometco Enters.,
    833 F. Supp. 344 (S.D.N.Y. 1993) ......................................................24

W.B. David & Co. v. DWA Commc'ns, Inc.,
    2004 U.S. Dist. LEXIS 2954 (S.D.N.Y. Feb. 26, 2004).....................23

Ward v. New York Univ.,
    2000 U.S. Dist. LEXIS 14067 (S.D.N.Y., Sept. 28, 2000)...........13, 16

Yalincak v. New York Univ.,
    2009 U.S. Dist. LEXIS 143913 (D. Conn. Sept. 3, 2009) ..................21

Zwiker v. Lake Superior State Univ. et al.
    (MI Ct. of Claims, Aug. 31, 2020).................................................11, 21

**Statutes And Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ......................................6, 23

N.Y. Exec. Order No. 202.6 (Mar. 18, 2020) ...............................................4

N.Y. Exec. Order No. 202.8 (Mar. 20, 2020) ...............................................5

N.Y. Exec. Order No. 202 (Mar. 7, 2020) .....................................................4

N.Y. State, Guidance on Executive Order 202.6, *Guidance for Determining*
    *Whether a Business Enterprise Is Subject to a Workforce Reduction Under*
    *Recent Executive Orders* ...................................................................5

## **PRELIMINARY STATEMENT**

In mid-March, like almost every other institution of higher learning in the country, and every school located in the State of New York, the unprecedented effects of the COVID-19 pandemic forced Defendant Fordham University ("Fordham" or the "University") to quickly shift to a virtual learning environment. Despite this fact, Fordham enabled Plaintiff Kareem Hassan, then a junior, to complete the Spring 2020 Semester by transitioning its academic and other services to a remote environment. Plaintiff did not withdraw, or attempt to withdraw, from the University. To the contrary, he continued his course of education, attending virtual classes and accepting credits toward his degree for the courses he completed. Yet, Plaintiff now sues Fordham on behalf of himself and all others who paid tuition and other fees for the Spring 2020 semester demanding the pro-rated return of tuition paid for the period during which only virtual classes were made available at Fordham University. Plaintiff does so even though these virtual classes enabled him to complete the Spring 2020 Semester during which New York City was at the center of a COVID-19 pandemic . This cannot be.

Specifically, Plaintiff brings causes of action for breach of contract, unjust enrichment, conversion, and "money had and received" to recoup an after-the-fact refund of any tuition payments attributable to the weeks when virtual instruction was offered. All four of the causes of action asserted in Plaintiff's First Amended Class Action Complaint And Demand For Jury Trial ("Amended Complaint") are entirely unsupportable, as a matter of law, and Plaintiff's Amended Complaint should be dismissed in its entirety, with prejudice. In the first instance, to the extent an implied contract exists, it requires only that the University permit a student to earn a degree if he or she "complies with the terms prescribed by the university". This notion is reinforced in the Financial Responsibility Agreement signed by Plaintiff which obligates Plaintiff to "pay any and all costs associated with [his] registration and/or receipt of services," and in return the University

commits to provide "educational services," without regard to modality. Nowhere does the Financial Responsibility Agreement obligate the University to provide only in-person instruction.

Moreover, it is axiomatic that Plaintiff cannot accept the benefits of his arrangement with Fordham (e.g., virtual instruction and course credit) yet demand to be relieved of his obligation (i.e., payment of tuition). Essentially, Plaintiff seeks a judgment from the court permitting him to have received virtual instruction and full course credit but only pay tuition for the weeks that in-person instruction was provided (or some unspecified "portion thereof"). Such a result would be both grossly inequitable and legally unsupportable.

In addition, all four of Plaintiff's causes of action essentially attempt an end-around challenge of the institution's quality of academic instruction. The crux of Plaintiff's Amended Complaint is that Fordham's pandemic-mandated transition to virtual education resulted in a "subpar" educational experience. <u>See</u> Complaint ¶¶ 13, 39.[1] However, it is well-settled in New York that courts should not wade into determinations regarding the adequacy of the education an institution provides to its students in the context of so-called "educational malpractice" claims. Plaintiff cannot side-step this black letter law by repackaging his claims under other names.

Ultimately, Plaintiff's breach of contract cause of action must be dismissed because Plaintiff does not and cannot point to any specific promise by Fordham to provide only in-person classes no matter the circumstance, including in the midst of a pandemic. Plaintiff's general references to course catalogs and policies are conclusory and legally deficient. Plaintiff also cannot show any damages, especially since: (1) tuition rates for in-person and virtual classes are the same, regardless of the manner of delivery; and (2) by his own admission Plaintiff's semester tuition obligation already was more than 50% less than the published tuition rate. Finally,

---

[1] Specific paragraphs from Plaintiff's Amended Complaint are cited herein as (Complaint ¶ __). A copy of Plaintiff's Amended Complaint is attached to the Affirmation Of Jonathan M. Kozak In Support Of Defendant's Motion To Dismiss ("Kozak Aff.") as Exhibit 1.

Plaintiff's unjust enrichment, conversion, and money had and received causes of action must be dismissed as attempts to repackage Plaintiff's flawed breach of contract cause of action.

Plaintiff does not assert Fordham should have continued to provide in-person, on campus classes for the remainder of the Spring 2020 Semester after the pandemic hit. Plaintiff also does not allege he was unable to continue his classes remotely, or that Fordham denied him any credits for classes he completed virtually. It is indisputable that the pandemic dramatically changed how everyone in the tri-state area (and beyond) functioned day-to-day, including in the second half of March, April and May 2020. Lives and routines were upended, and too many experienced the trauma and heartache of a prolific and deadly infectious disease. Nonetheless, Fordham did its part to protect the health and safety of its students, faculty, staff, and the community, by suspending on campus, in-person classes, and transitioning to a virtual environment, enabling students to continue to receive academic instruction and earn credits toward their chosen degrees. Fordham did not breach any specific contractual agreement restricting the modality of educational services, or otherwise violate any duty owed to Plaintiff. In fact, Plaintiff benefitted by Fordham's efforts, which he accepted. Thus, Plaintiff's Amended Complaint should be dismissed in its entirety for failure to state a claim upon which relief may be granted.

## BACKGROUND[2]

Plaintiff was enrolled as a student in Fordham College at Rose Hill, one of Fordham's undergraduate colleges, for the Spring 2020 Semester, which began on or about January 13, 2020. (Complaint ¶¶ 10, 18, 30). On March 7, 2020, New York Governor Cuomo issued an Executive Order whereby he declared a state of emergency across the State of New York as a

---

[2] The factual allegations asserted in the Amended Complaint which are contained within this recitation are accepted as true solely for purposes of this motion.

result of the public health effects of the COVID-19 pandemic. <u>See</u> N.Y. Exec. Order No. 202 (Mar. 7, 2020).[3] Two days later, on March 9, 2020, Fordham announced that it would need to temporarily suspend all in-person, on campus classes and transition to virtual classes which would begin on March 11, 2020. (Complaint ¶ 34). At the time of this announcement, Fordham planned to reevaluate the state of the public health crisis during the week of March 23rd, with the hope of potentially reopening in-person classes on March 30th. <u>See</u> *President's COVID-19 Update | March 9, 2020, 12 p.m.*, https://news.fordham.edu/university-news/presidents-covid-19-update-march-9-2020-12-p-m/.[4]

As a result of the rapidly deteriorating public health crisis in New York, on March 13, 2020, Fordham announced that all classes would continue in a virtual format for the remainder of the Spring 2020 Semester. <u>See</u> *University Operations | Update March 13, 2020, 8 p.m.*, https://news.fordham.edu/university-news/university-operations-update-march-13-2020-8-p-m/.[5] In the announcement, Fordham explained that it had made this difficult decision because it believed it to be "the only way to safeguard the health and safety of the campus community (and everyone with whom they come in contact), and still ensure the delivery of classes and the continuation of University business." <u>Id</u>.

On March 18, 2020, Governor Cuomo issued an Executive Order requiring non-essential businesses to reduce their in-person workforce by 50%. <u>See</u> N.Y. Exec. Order No. 202.6 (Mar. 18, 2020).[6] As the public health crisis in New York was evolving so rapidly, just two days later, on March 20, 2020, Governor Cuomo issued another Executive Order requiring non-essential

---

[3]  When reviewing a motion to dismiss, courts may take judicial notice of matters of public record, such as executive orders.  <u>See</u> <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 75 (2d Cir. 1998).  A copy of N.Y. Exec. Order No. 202 (Mar. 7, 2020) is attached to the Kozak Aff. as Exhibit 2.

[4]  When reviewing a motion to dismiss, courts may consider documents that the plaintiff referenced in the complaint or which were relied upon in drafting the complaint. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002).  A copy of *President's COVID-19 Update | March 9, 2020, 12 p.m.* is attached to the Kozak Aff. as Exhibit 3.

[5]  A copy of *University Operations | Update March 13, 2020, 8 p.m.* is attached to the Kozak Aff. as Exhibit 4.

[6]  A copy of N.Y. Exec. Order No. 202.6 (Mar. 18, 2020) is attached to the Kozak Aff. as Exhibit 5.

businesses to reduce their in-person workforce by 100% as of March 22, 2020. <u>See</u> N.Y. Exec. Order No. 202.8 (Mar. 20, 2020).[7] Although Governor Cuomo's Executive Orders required Fordham to cancel in-person classes, the University's decision to switch to virtual classes for the remainder of the Spring 2020 Semester was in accordance with New York State-issued guidance on Governor Cuomo's Executive Orders which allowed for "remote instruction or streaming of classes from public or private schools or health/fitness centers; provided, however, that no in-person congregate classes are permitted." <u>See</u> N.Y. State, Guidance on Executive Order 202.6, *Guidance for Determining Whether a Business Enterprise Is Subject to a Workforce Reduction Under Recent Executive Orders* (updated June 29, 2020), <u>https://esd.ny.gov/guidance-executive-order-2026</u>.[8] Subsequently, Fordham reviewed the issue of the tuition and fees that its students had paid for the Spring 2020 Semester, and announced that it would be reducing certain Spring 2020 Semester charges and refunding to students portions of various charges that they had paid for the Spring 2020 Semester, including but not limited to 50% of room and board charges, 50% of residence hall activity fees, 50% of general and lab fees, and 50% of ensemble fees. <u>See</u> *Coronavirus Student FAQ/ Refunds*, <u>https://www.fordham.edu/info/29575/coronavirus_updates/11481/coronavirus_student_faq#refunds</u>.[9]

Plaintiff filed his Class Action Complaint And Demand For Jury Trial on or about April 25, 2020. <u>See</u> Dkt. Entry No. 1. In accordance with Rule 2(b)(i)(1) of the Individual Practices of Judge Laura Taylor Swain, on July 17, 2020, Defendant's counsel sent a letter to Plaintiff's counsel outlining the bases for a motion to dismiss that Fordham intended to file if Plaintiff did

---

[7] A copy of N.Y. Exec. Order No. 202.8 (Mar. 20, 2020) is attached to the Kozak Aff. as Exhibit 6.
[8] A copy of N.Y. State, Guidance on Executive Order 202.6, *Guidance for Determining Whether a Business Enterprise Is Subject to a Workforce Reduction Under Recent Executive Orders* (updated June 29, 2020) is attached to the Kozak Aff. as Exhibit 7.
[9] A copy of *Coronavirus Student FAQ/ Refunds* is attached to the Kozak Aff. as Exhibit 8.

not agree to voluntarily withdraw and dismiss his Complaint. <u>See</u> Kozak Aff. ¶ 3. On July 22, 2020, counsel for the parties discussed Defendant's counsel's July 17 letter, and Plaintiff's counsel advised that Plaintiff intended to file an amended Complaint. <u>See</u> Kozak Aff. ¶ 4. On July 27, 2020, Your Honor issued an Order setting a deadline of August 5, 2020 for Plaintiff to file an Amended Complaint, and giving Fordham a deadline of September 4, 2020 to Answer or file a motion to dismiss if Fordham still believed such a motion to be warranted. <u>See</u> Dkt. Entry No. 11. Plaintiff filed the Amended Complaint on August 5, 2020. <u>See</u> Dkt. Entry No. 12.

As Plaintiff's Amended Complaint fails to remedy the deficiencies in Plaintiff's Complaint, Fordham now moves to dismiss Plaintiff's Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("F.C.R.P.") for failure to state a claim upon which relief can be granted.

<b><u>ARGUMENT</u></b>

I.    <b><u>LEGAL STANDARD</u></b>.

Rule 12(b)(6) requires dismissal of a cause of action when the plaintiff fails to state a claim upon which relief may be granted. "[A] plaintiff's obligation to provide the 'grounds' of his [or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). In evaluating a motion to dismiss, the Court "must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff." <u>See</u> <u>Bolt Elec. v. City of N.Y.</u>, 53 F.3d 465, 469 (2d Cir. 1995) (internal citations omitted); <u>Harris v. City of N.Y.</u>, 186 F.3d 243, 247 (2d Cir. 1999). To avoid dismissal, however, the plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions." <u>Gebhardt v. Allspect, Inc.</u>, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000).

After the Court winnows conclusory statements from a complaint and assumes any remaining factual allegations to be true, the Court must determine whether the complaint pleads "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). To survive a motion to dismiss, the plaintiff must plead factual allegations with sufficient specificity "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (dismissing complaint where plaintiffs had not "nudged their claims across the line from conceivable to plausible"). In other words, a plaintiff's complaint must be dismissed if it does not contain sufficient factual, non-conclusory allegations to allow the Court to "draw the reasonable inference that … [D]efendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Finally, in evaluating a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

II.     **NEW YORK COURTS RECOGNIZE AN APPROPRIATELY HIGH BAR FOR CLAIMS AGAINST EDUCATIONAL INSTITUTIONS BASED ON ALLEGED BREACH OF CONTACT OR OTHER RELATED CLAIMS IMPLICATING AN INSTITUTION'S ACADEMIC JUDGMENT.**

New York courts repeatedly have declined to wade into questions regarding the sufficiency of an education that a college or university provides to its students. This results from "the policy that the administrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are, for the most part, better suited to make relatively final decisions concerning wholly internal matters." Maas v. Cornell Univ., 94 N.Y.2d 87, 92 (1999). For this reason, New York courts have long held that claims for alleged deficient educational services, or so-called educational malpractice, are not viable under New

York law. See Paladino v. Adelphi Univ., 89 A.D.2d 85, 87 (2d Dept. 1982) ("The courts have uniformly refused, based on public policy considerations, to enter the classroom to determine claims based upon educational malpractice.") citing Hoffman v. Board of Education, 49 N.Y.2d 121 (1979); Ansari v. New York Univ., 1997 U.S. Dist. LEXIS 6863, at *7 (S.D.N.Y. May 12, 1997) ("New York's refusal to recognize a cause of action for educational malpractice stems from the courts' reluctance to 'make judgments as to the validity of broad educational policies' or 'sit in review of the day-to-day implementation of these policies.'") quoting Donohue v. Copiague Union Free Sch. Dist., 47 N.Y.2d 440, 445 (1979); Sirohi v. Lee, 222 A.D.2d 222, 222 (1st Dept. 1995) ("Courts have refused to substitute their judgment for that of university officials or to review the day-to-day administration of academic policies.").

"[E]ven if a claim is denominated breach of contract, 'where the essence of the complaint is that the school breached its agreement to provide an effective education,' and where the court is asked to 'evaluate the course of instruction' or review the soundness of the method of teaching that has been adopted by an educational institution,' the claim will be dismissed." Ansari, 1997 U.S. Dist. LEXIS 6863, at *8-9, quoting Paladino, 89 A.D.2d at 89-90; Gally v. Columbia Univ., 22 F. Supp. 2d 199, 206-07 (S.D.N.Y. 1998) ("Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'").

Here, Plaintiff's Amended Complaint is premised on the notion that Plaintiff should be refunded money because the "online learning options" made available for the Spring 2020 Semester were "subpar." See Complaint ¶¶ 13, 39. Plaintiff also alleges that the remote education provided was "not even remotely worth the amount charged". Complaint ¶ 40.

However, these claims require this Court to do exactly what consistent precedent has cautioned against – "substitute [its] judgement for that of university officials" and "evaluate the course of instruction" by determine whether the various methods and techniques that Fordham's professors utilized to teach in a virtual environment were "subpar" to the methods and techniques those professors typically utilize for in-person classes. This includes classes as varied as Sociology 101 to advanced graduate-level math and science classes, to law school classes. Plaintiff essentially asks this Court to make specialized determinations for every class Fordham initially offered in an in-person setting. (See Complaint ¶ 20). Therefore, Plaintiff's Amended Complaint should be dismissed in its entirety as an impermissible attempt to side-step long-standing, consistent precedent against entertaining claims for educational malpractice.

## III.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

Even assuming Plaintiff's breach of contract cause of action did not constitute an impermissible educational malpractice claim, it nonetheless should be dismissed because Plaintiff fails to adequately plead the elements necessary to establish a breach of contract (i.e., the existence of a promise by Fordham to provide only in-person classes to the exclusion of any other modality, Fordham's breach of that promise, and resulting damages). See Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (stating elements of breach of contract cause of action).

### A.    Plaintiff's Breach Of Contract Cause Of Action Must Be Dismissed Because Plaintiff Fails To Adequately Plead The Existence Of Any Promise To Provide Only In-Person Classes.

For reasons similar to its policy pertaining to educational malpractice claims, New York courts also have adhered to a stringent standard in assessing the viability of breach of contract claims involving students and universities. See Gally, 22 F. Supp. 2d at 207 ("The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student.").

Under New York law, students and universities enter into an implied contract upon a student's enrollment. See Gally, 22 F. Supp. 2d. at 206. In particular, "[w]hen a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, she will obtain the degree she seeks." Id. However, "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted." Id. at 207; Chira v. Columbia University in New York City, 289 F. Supp. 2d 477, 485-86 (S.D.N.Y. 2003) (dismissing breach of contract claim where the plaintiff "points to no document or conversation that gives rise to a promise which Columbia breached"); Baldridge v. State, 293 A.D.2d 941, 943 (3d Dept. 2002) (a breach of contract claim "requires a contract which provides for 'certain specified services' as 'courts have quite properly exercised the utmost restraint applying traditional legal rules to disputes within the academic community.'") quoting Paladino, 89 A.D.2d at 92 and Olsson v. Board of Higher Education, 49 N.Y.2d 408, 413 (1980).

Here, Plaintiff signed a contract upon his enrollment with Fordham entitled "Financial Responsibility Agreement".[10] The first section of the Financial Responsibility Agreement is entitled "Payment of Fees/Promise to Pay". Under this section, the Financial Responsibility Agreement states the following:

> I understand that when I register for any class or receive any service from Fordham University ("University") I accept full responsibility to pay any and all costs associated with my registration and/or receipt of services. I further understand and agree that my registration and acceptance of these terms constitutes a promissory note agreement (i.e., a financial obligation) in the form of an educational loan as defined by the U.S. Bankruptcy Code at 11 U.S.C. § 523(a)(8) in which the University is providing me educational services, and I

---

[10]  When a plaintiff "relies on the terms and effect of" an agreement in his complaint, a document reflecting that agreement is "integral to the complaint" and the Court may look to the agreement itself even if not formally incorporated by reference.  Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).  A copy of Plaintiff's Financial Responsibility Agreement with Fordham is attached to the Affidavit Of Stefano A. Terzulli In Support Of Defendant's Motion To Dismiss ("Terzulli Aff.") as Exhibit A.

> promise to pay for all assessed tuition, fees and other associated costs by the assigned due date. . . . I further understand that my failure to attend class or receive a bill does not absolve me of my financial responsibility to the University.

(Terzulli Aff. Ex. A).

The last section of the Financial Responsibility Agreement, aptly entitled "Entire Agreement", states as follows:

> This agreement remains in effect for the duration of my continuous enrollment at Fordham. This agreement supersedes all prior understandings, representations, negotiations and correspondence between the student and Fordham university and constitutes an agreement between the parties with respect to the matters described. This agreement may be modified by Fordham University if the modification is signed by me. Any modification is specifically limited to those policies and/or terms addressed in the modification.

(Terzulli Aff. Ex. A). Plaintiff's affirms his acceptance of these terms by signing.

The language of the Financial Responsibility Agreement is unambiguous. The Agreement requires Plaintiff to pay "[a]ny and all costs associated with [his] registration and or receipt of services." Nowhere does the Financial Responsibility Agreement obligate Fordham to provide only in-person educational services. Plaintiff has not, and cannot, point to any language within the Agreement (or anywhere else) that makes such a promise. Earlier this week in Zwiker v. Lake Superior State Univ. et al., the Michigan Court of Claims granted an educational institution's motion for pre-answer summary disposition of another Spring 2020 Semester breach of contract claim citing nearly identical "unambiguous language" contained in a Financial Responsibility Agreement. (MI Ct. of Claims, Opinion and Order, Aug. 31, 2020) (concluding the court could not read into an unambiguous agreement a term not agreed to by the parties – to provide only live, in-person instruction).[11]

---

[11] A copy of Zwiker v. Lake Superior State Univ. et al., (MI Ct. of Claims, Aug. 31, 2020), is attached to the Kozak Aff. as Exhibit 9.

Not surprisingly, Plaintiff does not point to any specific agreement or document wherein Fordham promised to provide only on-campus, in-person instruction for the entirety of the Spring 2020 Semester or otherwise prohibiting the continuation of classes virtually when prevented from doing so in-person. No such promise exists.

To overcome this insurmountable deficiency, in the Amended Complaint, Plaintiff references various screenshots from Fordham's Spring Semester 2020 Course Catalog showing classes for which he registered were originally scheduled to be conducted in-person and on campus. Ironically, Plaintiff's Amended Complaint implicitly acknowledges that Fordham did, in fact, provide these classes in-person and on campus during the first half of the Spring Semester 2020. This naturally changed when the pandemic hit. In any event, the in-person description in the Course Catalog does not amount to an obligation barring the continuation of classes virtually – never mind a legally binding one -- especially under these circumstances. In particular, the Course Catalog contains no language prohibiting Fordham from changing the location, time or modality of any particular class as may be required from time to time.

Plaintiff does not point to a single statement in the Spring Semester 2020 Course Catalog (or anywhere else) reflecting that Fordham promised to provide all of these classes exclusively in-person and on campus throughout the entirety of the semester, and not in any other format regardless of any exigent circumstances. The Spring Semester 2020 Course Catalog does not contain any such promise. Therefore, as a matter of law, the Course Catalog description cannot meet the high standard that New York courts require for a student to plead the existence of an enforceable contract against a university. See Gertler v. Goodgold, 107 A.D.2d 481, 485 (1st Dept. 1985) (reversing the lower court's denial of a motion to dismiss where "the university has never expressly, by contract or otherwise, obligated itself to provide the amenities plaintiff claims, and

thus has not relinquished its authority to make its own academic judgments and to administer and allocate its resources"); Menaker v. Hofstra Univ., 935 F.3d 20, 33 n.45 (2d Cir. 2019) (to establish a breach of contract cause of action against a university, the plaintiff must show that the university "failed to fulfil a specific contractual promise distinct from any overall obligation to offer a reasonable program.").

Similarly, Plaintiff attempts to buttress his claim by lifting the following irrelevant excerpts from the Student Attendance portion of Fordham's Academic Policies and Procedures: "Students are excepted [sic] to attend every class of every course for which they are registered." (Complaint ¶ 8). "[S]tudents are responsible for keeping a record of their own absences and may not exceed the maximum number allowed." Id. However, these statements make no distinction between in-person and virtual attendance; they simply evidence Fordham's attendance expectations in whatever format classes are being offered. These general policy/expectation statements are insufficient to legally constitute promises that can form the basis of an actionable breach of contract claim against a university. See Ward v. New York Univ., 2000 U.S. Dist. LEXIS 14067, at *10-12 (S.D.N.Y., Sept. 28, 2000) (dismissing student's breach of contract claim where student's claim based upon "general policy statements and broad and unspecified procedures and guidelines as the specific services which were promised but not provided").

Plaintiff is unable to point to a single document containing any promise to provide all classes in an in-person on campus format (to the exclusion of any other modality) for the entirety of the Spring 2020 Semester under all circumstances. Therefore, Plaintiff cannot sustain a breach of contract cause of action based on Fordham's transition to virtual classes for the second half of the Spring 2020 Semester as a result of the pandemic. See Jones v. Trustees of Union College, 92 A.D.3d 997, 999 (3d Dept. 2012) ("Supreme Court properly determined that plaintiff's failure to

identify the specific terms of the implied contract that he claims were violated by the College—such as an internal rule, regulation or code—is fatal to his claim."); Pearson v. Walden Univ., 144 F. Supp. 3d 503, 509 (S.D.N.Y. 2015) ("[t]he mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim upon which a relief can be granted") quoting Gally, 22 F. Supp. 2d at 207; Paladino, 89 A.D.2d at 92 (to allege a breach of contract claim against a school, plaintiff must allege a promise to provide "certain specified services").

## B. Plaintiff Fails To Plead Breach Of Any Express Or Implied Promise To Provide In-Person Classes.

Moreover, even if Plaintiff could point to any promise by Fordham to provide only in-person classes for the entirety of the Spring 2020 Semester under all possible circumstances, Plaintiff's breach of contract cause of action must be dismissed because he cannot show an actionable breach of that promise by Fordham. In evaluating a student's breach of contract cause of action against a university, one must keep in mind that "[t]he essence of the implied contract is that an academic institution must act in good faith in its dealings with its students." Olsson, 49 N.Y.2d at 414. Thus, to demonstrate breach of a contract in the educational context, rather than just showing a school's non-compliance with a contractual promise, the plaintiff must show that the offending school "acted in bad faith or in an arbitrary or irrational manner." Pell v. Trustees of Columbia Univ., 1998 U.S. Dist. LEXIS 407, at *63 (S.D.N.Y., Jan. 15, 1998); Babiker v. Ross Univ. Sch. of Med., 2000 U.S. Dist. LEXIS 6921 at *24 (S.D.N.Y. May 19, 2000) aff'd 86 F. App'x 457 (2d Cir. 2004) (the primary assessment in a student's breach of contract claim against a university is whether the university "acted in good faith or their action was arbitrary or irrational") quoting Gertler, 107 A.D.2d at 486; Pearson, 144 F. Supp. 3d at 509 ("contractual claims are

subject to judicial review to determine whether the school abided by its own rules, and whether it has acted in good faith or its action was arbitrary or irrational").

In <u>Paynter v. New York University</u>, the parent of a student sued New York University to recover tuition after the university canceled nineteen days of classes as a result of student protests relating to the Vietnam War. <u>See</u> <u>Paynter v. N.Y. Univ.</u>, 64 Misc. 2d 226, 227 (N.Y. Civ. Ct. 1970). The civil court ordered the university to refund tuition. The Appellate Term reversed the civil court's ruling, stating that the lower "court erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes for the time remaining in the school year." <u>Paynter</u>, 66 Misc. 2d 92, 92 (N.Y. App. Term 1971). The Appellate Term went on to explain, "while in a strict sense, a student contracts with a college or university for a number of courses to be given during the academic year, <u>the services rendered by the university cannot be measured by the time spent in a classroom</u>. The circumstances of the relationship permit the implication that the professor or the college may make minor changes in this regard." <u>Id</u>. at 92-93. (emphasis added). The Appellate Term concluded, "[t]he insubstantial change made in the schedule of classes does not permit a recovery of tuition." <u>Id</u>. at 93.

Here, Plaintiff does not accuse Fordham of cancelling classes and providing no educational services. All classes were provided, and credits were earned. Rather, Plaintiff complains only that Fordham transitioned to virtual classes, and no longer provided educational services in person and on campus. Plaintiff admits that Fordham did so because of the COVID-19 pandemic. (Complaint ¶¶ 1, 11, 34). The New York appellate court previously has ruled that the complete cessation of classes for nineteen days constituted an "insubstantial change made in the schedule of classes" which would not entitle students to a refund of tuition. Therefore, surely it

would be inconsistent to find that Fordham's mere transition to virtual classes as a result of a global pandemic and various Executive Orders requiring the cessation of in-person classes resulted in an actionable breach of contract cause of action.

Plaintiff does not allege Fordham's actions to continue the semester for its students in the midst of the COVID-19 outbreak in New York City by providing virtual classes were in bad faith or in any way arbitrary or irrational. Therefore, even if Plaintiff is able to show that Fordham promised to provide in-person classes on campus for the entirety of the Spring 2020 Semester, Plaintiff's breach of contract cause of action must be dismissed because he is unable to demonstrate that Fordham's transition to virtual classes was in bad faith or arbitrary. See Ward, 2000 U.S. Dist. LEXIS 14067, at *16 (dismissing claim relating to university's failure to abide by its "rules and procedures" where "there is nothing in the record, and plaintiff does not offer any supporting evidence, to suggest that defendants have either acted in bad faith, arbitrarily or irrationally"); Olsson, 49 N.Y.2d at 414 (dismissing claim where school "amply fulfilled its obligation to act in good faith").

**C.** **Plaintiff's Breach of Contract Cause of Action Must Be Dismissed Because Plaintiff Did Not Suffer Any Form Of Cognizable Damages.**

Plaintiff's breach of contract cause of action also fails because he cannot allege any quantifiable damage resulting from Fordham's alleged breach. Following Fordham's transition to virtual classes, Plaintiff continued with all of his courses in the virtual format and accepted the resulting credit earned for each of those classes.[12] Thus, Plaintiff's damages boil down to a nebulous claim that the virtual classes were somehow "subpar" or lesser than in-person classes.

---

[12]  Plaintiff vaguely acknowledges in his Amended Complaint that he continued to attend the virtual classes and received credit at the end of the semester.  If Plaintiff did not attend the virtual classes, he would not be in any position to comment on whether they were "subpar" to in-person classes.  However, if Plaintiff disputes this issue, Fordham can attach to its Reply papers a portion of Plaintiff's academic transcript showing the extremely high grades that Plaintiff received for these Spring 2020 Semester classes with purportedly "subpar" teaching methods.

See Complaint ¶¶ 13, 39. These allegations are legally insufficient to establish the damages element of a breach of contract cause of action. See Getko Grp., Inc. v. Amica Mut. Ins. Co., 2003 U.S. Dist. LEXIS 19238, at *6 (S.D.N.Y. Oct. 28, 2003) ("[D]amages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes.") citing Kenford Co. v. Erie County, 67 N.Y.2d 257 (1986). They also reinforce the notion that Plaintiff's claims are essentially an educational malpractice claim.

Moreover, contrary to the entire crux of Plaintiff's Amended Complaint, there is no distinction between tuition charges for in-person and virtual classes. This can be seen in the portions of Fordham's website that set forth the tuition rates for Fordham's various programs (which Plaintiff likely utilized in drafting ¶ 32 of the Amended Complaint).[13] Therefore, even if Plaintiff can establish a viable claim that is not an educational malpractice claim, he still cannot establish any cognizable damages, never mind entitlement to complete reimbursement of his tuition for the second half of the Spring 2020 Semester (Complaint ¶¶ 17, 41, 63, 65) despite having attended virtual classes and receiving course credit for doing so.[14]

Finally, Plaintiff also is unable to establish that he suffered any damages with regard to any contractual obligations arising out of the fees that he paid for the Spring 2020 Semester. In the first instance, Plaintiff has not stated in his Amended Complaint exactly which fees were not returned to him. Thus, Plaintiff fails to properly allege his breach of contract cause of action relating to the return of fees under the Iqbal/Twombly standard. See Twombly, 550 U.S. at 555

---

[13] Copies of the tuition rates stated on Fordham's website for the 2019-20 school year are attached to the Kozak Aff. as Exhibit 10.

[14] Making Plaintiff's argument for a 50% tuition refund even more absurd, Plaintiff's Amended Complaint reflects that he already paid far less than 50% of the published tuition price. (Cf. Complaint ¶¶ 18 and 32). Yet Plaintiff seeks, for himself and the alleged class, disgorgement of a pro-rated portion of up to 50% of the tuition rate. Thus, based on his own admission, Plaintiff arguably has no damages.

("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

Perhaps more importantly, Plaintiff's pleading failure likely is the result of the fact that Fordham returned all of the fees that Plaintiff paid that could be even arguably viewed as returnable. Aside from a late fee, the only fees that Plaintiff paid for the Spring 2020 Semester was a general fee, lab fee, and technology fee.[15] Thus, aside from the late fee and the technology fee, the latter of which was put to good use under the circumstances of Fordham's transition to virtual classes, Fordham returned 50% of all of the other fees that Plaintiff paid. See *Coronavirus Student FAQ/ Refunds*, https://www.fordham.edu/info/29575/coronavirus_updates/11481/coronavirus_student_faq#refunds, Kozak Aff. Ex. 8. Therefore, Plaintiff suffered no damages with regard to any contractual obligations arising from his payment of fees for the semester.

### D. <u>Plaintiff's Breach of Contract Cause of Action Must Be Dismissed Due To The Doctrine of Acceptance</u>.

Even assuming Fordham breached some contractual obligation to provide in-person classes to Plaintiff, Plaintiff nevertheless waived any right to pursue a claim against Fordham due to such breach when he remained enrolled, continued to attend classes remotely, and accepted the corresponding course credits toward his degree. It is well-settled that "[a]cceptance of benefit under the contract with knowledge of the wrong constitutes a waiver of the wrong." Emerson Elec. Co. v. Asset Mgmt. Assocs., 2012 U.S. Dist. LEXIS 39442, at *7 (E.D.N.Y. March 20, 2012); Sang Lan v. Aol Time Warner, Inc., 2012 U.S. Dist. LEXIS 187899, *9-10

---

[15]  Plaintiff was clearly calculated in the lack of specificity that he included in his Amended Complaint with regard to the fees he paid for the Spring 2020 Semester.  If Plaintiff, in his Opposition papers, claims to have paid any fees for the Spring 2020 Semester beyond a general fee, lab fee, technology fee and a late fee, Fordham can attach to its Reply papers details of Plaintiff's account confirming the fees that he paid for the Spring 2020 Semester.

(S.D.N.Y. Apr. 30, 2013) ("Where 'a party has actual knowledge of a breach and continues to perform under and accepts the benefits of the contract, such continuing performance constitutes a waiver of the breach.'") quoting National Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 675 (S.D.N.Y. 1991).

It is axiomatic that Plaintiff cannot accept the benefit of the academic instruction that he obtained from Fordham (i.e., the learning and credits received), but then seek to avoid his obligation to pay tuition for same. Thus, even if Plaintiff was able to plausibly plead all of the elements of a breach of contract cause of action relating to Fordham's transition to virtual learning for the end of the Spring 2020 Semester (which he cannot), absolutely no basis exists by which Plaintiff's breach of contract cause of action can be advanced, and Fordham is entitled to judgement as a matter of law.

### E. Plaintiff's Breach Of Contract Cause Of Action Must Be Dismissed Because Fordham Is Excused From Any Obligation To Provide In-Person Classes From March 2020 Through The Remainder Of The Semester Due To Impossibility Of Performance.

Finally, even if Plaintiff was capable of establishing all of the elements of a breach of contract cause of action, the claim must be dismissed due to the doctrine of impossibility of performance. "It is well settled New York law that impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract." Chase Manhattan Bank v. Traffic Stream Infrastructure, 52 Fed. App'x 528, 530 (2d Cir. 2002) (quoting Kel Kim Corp. v. Cent. Mkts., Inc., 70 N.Y.2d 900, 902 (1987)); Ebert v. Holiday Inn, 628 Fed. Appx. 21, 23 (2d Cir. 2015) ("a defendant may be excused from a contractual obligation where performance is impossible"); L. N. Jackson & Co. v. Royal Norwegian Gov't, 177 F.2d 694, 697

(2d Cir. 1949) "[I]it is well settled that a contractual duty is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prohibited by an administrative order made with due authority by an officer of the United States.").

The onset of the COVID-19 pandemic within New York City in early March 2020 made it impossible for Fordham to continue to provide in-person classes. Continuing in-person classes in New York City during the early stages of the pandemic would have unnecessarily placed students, faculty, staff, and everyone that came into contact with them at risk of COVID-19 infection and run afoul of all pleas from the government and health organizations to "flatten the curve." Moreover, once Governor Cuomo issued the Executive Orders prohibiting all in-person classes within the State of New York, it would have been illegal for Fordham to continue to hold in-person classes. One would be hard pressed to imagine another set of circumstances as unforeseeable as the COVID-19 pandemic, which essentially brought the entire country to a sudden, screeching halt in a manner never before experienced. Accordingly, Plaintiff will be unable to advance his breach of contract cause of action because the specific performance Plaintiff seeks was impossible.

## IV.     PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR UNJUST ENRICHMENT.

### A.     Plaintiff's Unjust Enrichment Cause Of Action Must Be Dismissed As Duplicative Of His Breach Of Contract Cause of Action.

New York courts do not allow plaintiffs to proceed with unjust enrichment causes of action when they are duplicative of breach of contract claims. See Corsello v Verizon N.Y., Inc., 18 N.Y.3d 777, 791 (2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."); Scarola Ellis LLP v. Padeh, 116 A.D.3d 609, 611 (1st. Dept. 2014) ("It is well settled that a claim for unjust enrichment does not

lie where it duplicates or replaces a conventional contract claim."). Plaintiff's unjust enrichment claim is based upon the exact same allegations, and seeks to recover the same damages, as his breach of contract cause of action. For that reason alone, Plaintiff's unjust enrichment cause of action must be dismissed as duplicative of Plaintiff's breach of contract cause of action. See Benham v. eCommission Solutions, LLC, 118 A.D.3d 605, 607 (1st Dept. 2014) ("Plaintiff's unjust enrichment claim, which seeks precisely the same damages as her claim for breach of contract, is indistinguishable from her claim for breach of contract, and must be dismissed as duplicative of the contract claim."); Jeffers v American Univ. of Antigua, 125 A.D.3d 440, 443 (1st Dept. 2015) (same).

Moreover, as previously discussed, it is generally accepted that universities have an implied contractual relationship with their students. See Gally, 22 F. Supp. 2d at 206 ("When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, she will obtain the degree she seeks."). The terms of this implied contract are reinforced in the Financial Responsibility Agreement, which provides no promise with respect to in-person classes. See Zwiker (Kozak Aff., Ex. 9). Therefore, as Plaintiff's relationship with Fordham is contractual in nature, Plaintiff is barred from proceeding with an unjust enrichment cause of action in the alternative to his breach of contract cause of action. See Yalincak v. New York Univ., 2009 U.S. Dist. LEXIS 143913 at *44 (D. Conn. Sept. 3, 2009) (applying New York law and ruling that the student and university had an "implied contract" which was "governed by the university's bulletins and regulations" and "[b]ecause Plaintiff and NYU had a contract, he cannot bring an action for unjust enrichment."). Plaintiff's unjust enrichment claim should be dismissed.

**B.** **Plaintiff Cannot Establish The Elements Of An Unjust Enrichment Cause of Action.**

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." <u>Kaye v. Grossman</u>, 202 F.3d 611, 616 (2d Cir. 2000). Plaintiff's unjust enrichment claim also fails because Plaintiff cannot establish that Fordham was enriched at Plaintiff's expense and that "equity and good conscience require restitution." <u>Orange County Choppers, Inc. v. Olaes Enters.</u>, 497 F. Supp. 2d 541, 557 (S.D.N.Y. 2007).

In analyzing unjust enrichment claims, New York courts look to "whether the defendant's conduct was tortious or fraudulent." <u>Paramount Film Distrib. Corp. v. State</u>, 30 N.Y.2d 415, 421 (1972); <u>Clark v. Daby</u>, 300 A.D.2d 732, 733 (3d Dept. 2002). Plaintiff does not allege Fordham engaged in any conduct that was tortious or fraudulent, nor can he. Fordham only switched Plaintiff's classes to a virtual format because New York City was in the midst of a global pandemic. Nonetheless, Fordham devised a plan that allowed all of its students, who already had devoted half of the semester to their chosen studies, to complete the semester.

Although Plaintiff apparently feels that virtual learning was somehow inferior to in-person classes, as discussed above, this argument is akin to an impermissible educational malpractice. Ultimately, within a matter of days Fordham implemented a system that allowed students to complete their courses and receive credits without waiting for months with the hope that New York State would allow campuses to reopen at some point in the future. As Plaintiff cannot show that Fordham acted in a manner that was "tortious and fraudulent" such that "equity and good conscience require restitution" to Plaintiff, Plaintiff cannot sustain his unjust enrichment cause of action.

## V.     <u>PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR CONVERSION</u>.

Just like Plaintiff's unjust enrichment claim, his claim of conversion also must be dismissed because it is a duplicative repackaging of Plaintiff's breach of contract cause of action. "It is not enough to support a claim of conversion merely to incorporate the factual allegations relating to breach of contract and fiduciary duty." <u>Berman v. Sugo LLC</u>, 580 F. Supp. 2d 191, 207 (S.D.N.Y. 2008). Instead, "a plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." <u>Benex LC v. First Data Much. Servs. Corp.</u>, 2016 U.S. Dist. LEXIS 33849, at *15 (E.D.N.Y. Mar. 16, 2016) (internal quotation marks omitted); <u>W.B. David & Co. v. DWA Commc'ns, Inc.</u>, 2004 U.S. Dist. LEXIS 2954, at *16 (S.D.N.Y. Feb. 26, 2004) (a conversion claim must be predicated on "an actionable wrong other than a breach of contract"). "Furthermore, a claim for conversion is deemed redundant, and may be dismissed pursuant to Rule 12(b)(6), where damages are merely being sought for a breach of contract." <u>W.B. David & Co.</u>, 2004 U.S. Dist. LEXIS 2954, at *16. Plaintiff does not allege unlawful acts in any manner beyond the allegations supporting Plaintiff's breach of contract cause of action. Thus, Plaintiff is unable to sustain his conversion cause of action.

Additionally, Plaintiff's conversion claim also is unsustainable on the merits. "To establish a cause of action to recover damages for conversion, a plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." <u>Barnet v. Drawbridge Special Opportunities Fund LP</u>, 2014 U.S. Dist. LEXIS 124410 at *53 (S.D.N.Y. Sept. 5, 2014) quoting <u>Nat'l Ctr. for Crisis Mgmt., Inc. v. Lerner</u>, 91 A.D.3d 920 (2d Dept. 2012). "A claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal species of property." <u>Matzan v. Eastman</u>

Kodak Co., 134 A.D.2d 863, 863-64 (4th Dept. 1987). Plaintiff's conversion claim fails because "in-person educational services," the item in which Plaintiff claims to have an ownership interest, is not a tangible piece of property that can support a conversion cause of action. See Sun Gold, Corp. v. Stillman, 95 A.D.3d 668, 670 (1st Dept. 2012) ("The conversion of intangible property is not actionable"). Therefore, Plaintiff's conversion cause of action must be dismissed as a matter of law.

## VI.    PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR MONEY HAD AND RECEIVED.

Plaintiff's "money had and received" claim must be dismissed as duplicative of his breach of contract cause of action. See Teachers Ins. & Annuity Ass'n v. Wometco Enters., 833 F. Supp. 344, 349 n.9 (S.D.N.Y. 1993) ("no claim for unjust enrichment/money had and received can stand where, as here, a contract covers the same subject matter for which relief is sought"); Glob. Entm't, Inc. v. N.Y. Tel. Co., 2000 U.S. Dist. LEXIS 16038, at *17 (S.D.N.Y. Oct. 31, 2000) (a money had and received claim "is an obligation which the law creates in the absence of agreement when one party possesses money that in equity and good conscience he ought not to retain and that belongs to another"). It already has been established that Plaintiff's relationship with Fordham is contractual in nature, the terms of which are that if Plaintiff "complies with the terms prescribed by [Fordham], [he] will obtain the degree [he] seeks." Gally, 22 F. Supp. 2d at 206. Therefore, as Plaintiff's relationship with Fordham was governed by this contractual arrangement, Plaintiff cannot sustain a claim for money had and received.

Additionally, just like Plaintiff's other quasi-contract causes of action, even if Plaintiff's money had and received claim is not dismissed as duplicative of his breach of contract claim, it must also be dismissed on the merits. "The essential elements of a claim for money had and received are that (1) defendant received money belonging to plaintiff; (2) defendant benefited from

the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 205 (S.D.N.Y. 2011) quoting Nordlicht v. N.Y. Tel. Co., 799 F.2d 859, 865 (2d Cir. 1986). A money had and received claim is only viable "if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass." Moreno-Godoy v. Gallet Dreyer & Berkey, LLP, 2016 U.S. Dist. LEXIS 137843, at *8-9 (S.D.N.Y. Oct. 4, 2016) quoting Fischer v. Graham, 2016 U.S. Dist. LEXIS 72749, at *13 (S.D.N.Y. June 3, 2016). "Specifically, courts have found that plaintiffs lack the requisite possessory interest in money freely given to a defendant with the expectation of performance." Fernbach, LLC v. Capital & Guarantee Inc., 2009 U.S. Dist. LEXIS 71564, at *13 (S.D.N.Y. Aug. 12, 2009) citing Panix Promotions, Ltd. v. Lewis, 2002 U.S. Dist. LEXIS 7176 (S.D.N.Y. Jan. 22, 2002; Nat'l Westminster Bank PLC v. Grant Prideco, Inc., 261 F. Supp. 2d 265, 275 (S.D.N.Y. 2003).

Plaintiff's Amended Complaint does not even contain a conclusory allegation that he paid his tuition and fees to Fordham under circumstances of "oppression, imposition, extortion, or deceit." Instead, Plaintiff voluntarily paid tuition and fees to Fordham in exchange for the opportunity to earn credits for the Spring 2020 Semester, which he received. As Fordham did not use "oppression, imposition, extortion, or deceit" to convince Plaintiff to make these payments, and Plaintiff instead made the payments "with the expectation of performance," Plaintiff fails to state a claim for money had and received.

## **CONCLUSION**

Based upon the foregoing, Fordham respectfully requests the Court to enter an Order: (1) dismissing Plaintiff's claims against Fordham in their entirety and with prejudice; and (2) awarding Fordham such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601

200 Connell Drive, Suite 2000
Berkeley Heights, NJ  07922
(908) 795 5200

By: _____

Jonathan M. Kozak
Gregory T. Alvarez*
Isaac J. Burker
Michael J. Nesse*

*ATTORNEYS FOR DEFENDANT*

Dated: September 4, 2020
White Plains, New York

*\* Notice of Appearance to be filed*

26

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

**KAREEM HASSAN, individually and on behalf of all others similarly situated,**

**Plaintiff,**

-against-

Case No.1:20-CV-03265 (LTS) (BCM)

**FORDHAM UNIVERSITY,**

**Defendant.**

-------------------------------------------------------------------x

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that, on September 4, 2020, a true and correct copy of Defendant's Memorandum Of Law In Support Of Motion To Dismiss has been served via ECF and overnight mail on counsel for Plaintiff at the address of record set forth below:

Philip L. Fraietta, Esq.
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, New York 10019
pfraietta@bursor.com

_____
Jonathan M. Kozak