UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
KAREEM HASSAN, individually and on
behalf of all others similarly situated,

                            **Plaintiff,**

              -against-                    Case No.1:20-CV-03265 (LTS) (BCM)

FORDHAM UNIVERSITY,

                          **Defendant.**
-------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS

JACKSON LEWIS P.C.
44 SOUTH BROADWAY, 14TH FLOOR
WHITE PLAINS, NEW YORK 10601
(914) 872-8060

200 CONNELL DRIVE, SUITE 2000
BERKELEY HEIGHTS, NJ 07922
(908) 795 5200
BY:   JONATHAN M. KOZAK, ESQ.
         GREGORY T. ALVAREZ, ESQ.*
         ISAAC J. BURKER, ESQ.
         MICHAEL J. NESSE, ESQ.*

*ATTORNEYS FOR DEFENDANT*

*Notice of Appearance to be filed

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

    I.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT. .............4

        A.  The Only Agreement Between The Parties -- Financial Responsibility Agreement --
Fails To Provide A Promise Of Solely In-Person Classes. ......................................4

        B.  Plaintiff Cannot Show That Fordham Acted Arbitrarily Or In Bad Faith As Is
Necessary To Show Breach Of Contract In The University Context. .....................5

        C.  Plaintiff's Acceptance Of Virtual Instruction and Course Credit Precludes Him
From Voiding His Agreement and Obligation To Pay Tuition. ..............................8

    II.   PLAINTIFF'S QUASI-CONTRACT CLAIMS MUST BE DISMISSED. ...................10

    III.  ALL FOUR OF PLAINTIFF'S CLAIMS ARE RE-PACKAGED EDUCATIONAL
MALPRACTICE CLAIMS. ..........................................................................................12

CONCLUSION ............................................................................................................................12

Case 1:20-cv-03265-KMW-BCM   Document 26   Filed 10/19/20   Page 3 of 18


# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ansari v. New York Univ.,
    1997 U.S. Dist. LEXIS 6863 (S.D.N.Y. May 12, 1997)......................................................6, 12

Anthes v. N.Y. Univ.,
    2018 U.S. Dist. LEXIS 53762 (S.D.N.Y. Mar. 12, 2018) ........................................................6

Babiker v. Ross Univ. Sch. of Med.,
    2000 U.S. Dist. LEXIS 6921 (S.D.N.Y. May 19, 2000) aff'd 86 Fed. App'x 457 (2d
    Cir. 2004) ................................................................................................................................5

Benex LC v. First Data Much. Servs. Corp.,
    2016 U.S. Dist. LEXIS 33849 (E.D.N.Y. Mar. 16, 2016) .....................................................11

Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.,
    448 F.3d 573 (2d Cir. 2006)..................................................................................................10

Bigda v. Fischbach Corp.,
    898 F. Supp. 1004 (S.D.N.Y. 1995).........................................................................................9

Cheves v. Trs. of Columbia Univ.,
    89 A.D.3d 463 (1st Dept. 2011)...............................................................................................6

Chira v. Columbia Univ.,
    289 F. Supp. 2d 477 (S.D.N.Y. 2003)......................................................................................6

Chong v. Northeastern Univ.,
    2020 U.S. Dist. LEXIS 181622 (D. Mass. Oct. 1, 2020).................................................2, 5, 7

Clark v. Daby,
    300 A.D.2d 732 (3d Dept. 2002) ...........................................................................................11

Deen v. New Sch. Univ.,
    2007 U.S. Dist. LEXIS 25295 (S.D.N.Y. Mar. 27, 2007) ............................................6, 7, 12

ESPN, Inc. v. Office of Comm'r of Baseball,
    76 F. Supp. 2d 383 (S.D.N.Y. 1999)....................................................................................8, 9

Fernbach, LLC v. Capital & Guarantee Inc.,
    2009 U.S. Dist. LEXIS 71564 (S.D.N.Y. Aug. 12, 2009) .....................................................11

Gally v. Columbia Univ.,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998)......................................................................................10

Gertler v. Goodgold,
 107 A.D.2d 481 (1st Dept. 1985) ................................................................................................6

Getko Grp., Inc. v. Amica Mut. Ins. Co.,
 2003 U.S. Dist. LEXIS 19238 (S.D.N.Y. Oct. 28, 2003) ............................................................9

Horrigan v. E. Mich. Univ.,
 2020 Mich. Ct. Cl. LEXIS 4 (Mich. Comm. Cl. Sept. 24, 2020) ..........................................2, 5

Maas v. Cornell Univ.,
 94 N.Y.2d 87 (1999) ....................................................................................................................6

Novio v. New York Academy of Art,
 317 F. Supp. 3d 803 (S.D.N.Y. 2018) .....................................................................................6, 12

Paramount Film Distrib. Corp. v. State,
 30 N.Y.2d 415 (1972) ................................................................................................................11

Paynter v. N.Y. Univ.,
 64 Misc. 2d 226 (N.Y. Civ. Ct. 1970) .........................................................................................6

Sang Lan v. Aol Time Warner, Inc.,
 2012 U.S. Dist. LEXIS 187899 (S.D.N.Y. Apr. 30, 2013) .........................................................8

Superintendent of Ins. v. Ochs,
 377 F.3d 209 (2d Cir. 2004) ......................................................................................................10

Teachers Ins. & Annuity Ass'n v. Wometco Enters.,
 833 F. Supp. 344 (S.D.N.Y. 1993) ............................................................................................10

W.B. David & Co. v. DWA Commc'ns, Inc.,
 2004 U.S. Dist. LEXIS 2954 (S.D.N.Y. Feb. 26, 2004) ............................................................10

Yalincak v. New York Univ.,
 2009 U.S. Dist. LEXIS 143913 (D. Conn. Sept. 3, 2009) ........................................................10

Zwiker v. Lake Superior State University,
 2020 Mich. Ct. Cl. LEXIS 2 (Mich. Comm. Cl. Aug. 31, 2020) ...........................................2, 5

**PRELIMINARY STATEMENT**

Defendant Fordham University ("Fordham" or the "University") respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss Plaintiff's Amended Complaint ("Amended Complaint"). Contrary to Plaintiff's assertion, the crux of Fordham's motion is not that an educational institution "is subject to its own special set of laws that grant it near immunity from all suit". Certainly, Fordham's decision to continue educational services virtually rather than physically in-person and on campus during the height of the COVID-19 outbreak involved the school's exercise of its "specialized discretion." However, the crux of Fordham's motion should be clear: (1) no contract exists whereby the University promised educational services would be provided exclusively in-person and on campus, and (2) even if such a contract exists, Plaintiff's claims must fail because he cannot accept all the benefits of such contract and then, after-the-fact, seek to terminate his obligations thereunder. On these points, New York law is clear.

First, the Financial Responsibility Agreement (FRA) signed by Plaintiff unambiguously sets forth the terms of the University's contractual arrangement with Plaintiff. Specifically, the FRA states that the University will provide Plaintiff with "educational services" in exchange for the payment of tuition and fees. (Terzulli Aff. Ex. A). Nowhere does the FRA obligate Fordham to provide educational services exclusively in-person and on campus. Moreover, the FRA expressly states that the "agreement supersedes all prior understandings, representations, negotiations and correspondence between the student and the University" and limits subsequent modifications to signed documents (id.), thus precluding any contractual reliance on a Course Catalog or other documents, as Plaintiff suggests. In any event, the Course Catalog merely provides information about classes offered; it does not create a binding contract preventing any

changes in the scheduling, location, or modality by which the instruction may be delivered. Not surprisingly, other courts across the country have confirmed this logic in decisions based on similar agreements. See Chong v. Northeastern Univ., 2020 U.S. Dist. LEXIS 181622, at *8-9 (D. Mass. Oct. 1, 2020) (plaintiff executed a FRA which "tie[d] the payment of tuition to registration for courses, not to the receipt of any particular method of course instruction," legally negating any reliance on course descriptions, implicit understandings, the university's website, and semester schedules); Zwiker v. Lake Superior State University, 2020 Mich. Ct. Cl. LEXIS 2, at *10-17 (Mich. Comm. Cl. Aug. 31, 2020) (where plaintiff executed a Tuition Contract accepting "full responsibility to pay all tuition, fees, and other associated costs … as a result of [her] registration and/or receipt of services," the court would not read into the unambiguous contract a term providing for live, in-person instruction); Horrigan v. E. Mich. Univ., 2020 Mich. Ct. Cl. LEXIS 4, at *8-15 (Mich. Comm. Cl. Sept. 24, 2020) (plain language of the Tuition Agreement defeated plaintiff's breach of contract claim because it did not contain terms for live, in-person instruction and provided that all fees were to be paid as a result of registration).

Second, Plaintiff does not deny that when Fordham transitioned to virtual learning for the remainder of the Spring 2020 Semester, Plaintiff continued to attend classes, and receive live, personally-delivered instruction, albeit remotely. Plaintiff does not allege he was not provided with the benefit of instruction from his professors. Plaintiff does not allege he was denied the opportunity to obtain course credit toward his degree. Having received educational instruction and earned course credits for the Spring 2020 Semester -- the benefit of his agreement with the University -- Plaintiff cannot now void his agreement with Fordham by claiming he should not have to pay for the classes he attended remotely and credits received. Therefore, even if there was a contractual obligation for Fordham to deliver educational services exclusively in-person, and on-

campus, which there clearly was not, Plaintiff's acceptance of the remote instruction and course credit through the end of the Spring 2020 Semester precludes any claim to avoid his obligation to pay tuition under his agreement for this period of time. The case law is clear that Plaintiff waived his right to terminate any such contract with Fordham. Contrary to his assertion, Plaintiff does not seek actual "damages" due to an alleged breach. Rather, Plaintiff is seeking "Defendant's disgorgement of the pro-rated portion of tuition and fees (or at a minimum a portion thereof), proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online". (Amended Complaint ¶ 17, 41). However, having continued to attend classes remotely and receive course credits, Plaintiff waived any such claim.

Third, even if Plaintiff could establish some kind of contract beyond the FRA, his allegation that "Defendant has not delivered the educational services, facilities, access and/or opportunities that Mr. Hassan and the putative class contracted and paid for" is premised upon his conclusory factual allegation that "[t]he online learning options provided to Fordham students are subpar in practically every aspect …." (Amended Complaint ¶ 13, 39).[1] Contrary to Plaintiff's assertion, this dispute is not akin to the sale of a building. The adjudication of this claim necessarily requires this Court to make findings that measure the quality of educational instruction provided through a virtual medium. Doing so will unquestionably require the Court to evaluate Fordham's academic judgment. Under such circumstances, New York courts afford universities

---

[1] Plaintiff makes various allegations that educational services were not provided in-person, but rather were only offered "online". Plaintiff's ambiguous pleading lacks descriptive factual allegations and, as a result, is inaccurate and misleading. Virtual learning services are live and in-person, even where the student and the teacher are in different or remote locations. Fordham's transition to delivering educational and other services virtually involved use of all available technology to continue the semester. In fact, Fordham was able to facilitate continued synchronous learning. Live-streams, instant messaging, live chats, webinars, and video conferencing all were utilized to allow students and faculty to communicate, collaborate, and learn in real time. Thus, even though the pandemic prevented students and faculty from being physically together on campus for the second half of the Spring 2020 Semester, live, interactive instruction unquestionably continued. Plaintiff does not allege otherwise.

3

a high degree of deference in assessing breach of contract claims related to universities' exercise of academic judgement, particularly in the absence of a specific promise for a specific service.

As there is no legal or equitable basis for the relief Plaintiff seeks, his Amended Complaint should be dismissed in its entirety, with prejudice.

I. **PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.**

    A. **The Only Agreement Between The Parties -- Financial Responsibility Agreement -- Fails To Provide A Promise Of Solely In-Person Classes.**

Plaintiff fails to point to a specific promise by Fordham to provide solely on-campus, in-person classes for the entire Spring 2020 Semester. As more thoroughly discussed in Fordham's initial motion papers, neither the Spring Semester 2020 Course Catalog nor the Student Attendance portion of Fordham's Academic Policies and Procedures contains any such promise. Plaintiff does not point to any other document to support this promise. Moreover, the FRA -- the sole written agreement between Plaintiff and the University -- requires Plaintiff to pay "[a]ny and all costs associated with [his] registration and or receipt of services". The FRA does not obligate Fordham to provide only in-person educational services, only "educational services".

Plaintiff argues that the FRA is not an enforceable contract because it is one-sided in that it requires students to pay tuition and fees without imposing any obligations on the University, and lacks material terms necessary to form a contract. However, the plain language of the FRA clearly includes material terms when it allows students to register for classes and receive "educational services" from the University in exchange for the student's agreement to pay all tuition and fees. (Terzulli Aff. Ex. A). The FRA does not address the modality of classes, <u>because Fordham does not promise to provide classes in any specific modality</u>. It is difficult to understand how Plaintiff can argue, on one hand that the FRA is unenforceable as a result of its lack of material terms and,

4

on the other hand, that the Spring 2020 Semester Course Catalog and the Student Attendance portion of Fordham's Academic Policies and Procedures form a binding contract.

Finally, Plaintiff argues that the FRA does not apply to any understandings that might arise subsequent to his signing of the FRA in July 2017; however, the FRA specifically states that it remains in effect for the duration of the student's enrollment, and that its terms can only be modified by signed documents. (Terzulli Aff. Ex. A). Plaintiff has not produced a signed document modifying the FRA. Thus, the FRA remains in effect. Notably, courts across the country have found that nearly identical language creates enforceable agreements precluding similar breach of contract and quasi-contract claims relating to other institutions' transition to virtual learning for the second half of the Spring 2020 Semester. See Chong[2]; Zwiker[3]; Horrigan. Thus, Plaintiff's breach of contract claim fails because the FRA, the only agreement between the parties, does not provide for solely in-person, on-campus education.

**B.      Plaintiff Cannot Show That Fordham Acted Arbitrarily Or In Bad Faith As Is Necessary To Show Breach Of Contract In The University Context.**

Plaintiff seeks to limit the deferential standard applied by New York courts reviewing alleged breach of contract claims against universities; however, New York courts do not limit this deference standard to Article 78 proceedings or any significantly narrow type of breach of contract claim. See Babiker v. Ross Univ. Sch. of Med., 2000 U.S. Dist. LEXIS 6921 at *24 (S.D.N.Y.

---

[2] Plaintiff attempts to distinguish Chong by arguing that, unlike in Chong, he specifically alleges in his Complaint that the terms of Fordham's contract with students was set forth in the Spring Semester 2020 Course Catalog. However, Plaintiff's conclusory allegation to that affect is insufficient to distinguish Chong because: (1) the FRA specifically states that it can only be modified by a signed agreement; and (2) there is nothing in the Spring 2020 Semester Course Catalog which promises exclusively in-person and on campus classes.

[3] Plaintiff attempts to distinguish Zwicker by arguing that the plaintiff in Zwicker did not dispute the existence of the tuition contract, or that the contract was controlling. However, Plaintiff has no basis for disputing the existence of the FRA inasmuch as Fordham has already produced it, and Plaintiff's conclusory argument that the FRA does not control the parties' relationship is not sufficient to suddenly make the agreement unenforceable. Plaintiff also argues that in Zwicker it was unclear which classes the plaintiff had registered for; however, that was not the basis for the court's dismissal of the case. See Id. at 7-10.

5

May 19, 2000) *aff'd* 86 Fed. App'x 457 (2d Cir. 2004) (primary assessment in student's breach of contract claim against university is whether university "acted in good faith or their action was arbitrary or irrational") quoting Gertler, 107 A.D.2d at 486; Pearson, 144 F. Supp. 3d at 509 ("judicial review [limited] to determin[ing] whether the school abided by its own rules, and whether it has acted in good faith or its action was arbitrary or irrational").[4] Additionally, the cases Plaintiff cites are inapposite because they only allowed portions of contract claims unrelated to the overall educational experience. Here, Plaintiff's claim is that "the online learning options" offered to Fordham students "[were] subpar in practically every aspect." See Amended Complaint ¶¶ 13, 39.

For example, in Ansari v. New York Univ., 1997 U.S. Dist. LEXIS 6863 (S.D.N.Y. May 12, 1997) the breach of contract claim was based on alleged promises by the university to provide very specific services, such as access to an x-ray machine, a supply of orthodontic supplies, and faculty-tutor advisors. Id. at *4. In Deen v. New Sch. Univ., 2007 U.S. Dist. LEXIS 25295 (S.D.N.Y. Mar. 27, 2007), the only portion of the plaintiffs' breach of contract claim that was not dismissed related to an alleged contractual requirement to include a certain school's name on graduate's diplomas. Id. at *11-16. This once again pertained to a promise for specific services that had nothing to do with the quality of the educational experience. Similarly, in Novio v. New York Academy of Art, 317 F. Supp. 3d 803 (S.D.N.Y. 2018), the only portions of the plaintiff's breach of contract claim that survived the school's motion to dismiss related to alleged contractual

---

[4] See also Paynter v. N.Y. Univ., 64 Misc. 2d 226, 227 (N.Y. Civ. Ct. 1970) (deference applied in breach of contract based on dispute over cancellation of classes as a result of Vietnam-related protests; outside of Article 78 context); Chira v. Columbia Univ., 289 F. Supp. 2d 477, 485-86 (S.D.N.Y. 2003) (deference applied in breach of contract based on failure to assign a faculty advisor to a student); Cheves v. Trs. of Columbia Univ., 89 A.D.3d 463, 464 (1st Dept. 2011) (deference applied in breach of contract alleged based upon dispute over denial of campus access for alumni); Gertler v. Goodgold, 107 A.D.2d 481, 485-86 (1st Dept. 1985) (deference applied in breach of contract alleged based on dispute over office space; declining to convert to Article 78); Maas v. Cornell Univ., 94 N.Y.2d 87, 92-94 (1999) (deference applied in breach of contract related to alleged failure to follow procedures relating to sex harassment investigation; declining to convert to Article 78); Anthes v. N.Y. Univ., 2018 U.S. Dist. LEXIS 53762 at *31-34 (S.D.N.Y. Mar. 12, 2018) (deference applied in breach of contract related to inadequate job placement assistance).

6

promises to provide a point-person to handle sex harassment complaints, to respond to complaints of sex harassment, and to provide career services. Id. at * 813. Once again, these portions of the contract claims related to the provision of specific services that were separate and apart from the quality of the educational experience. Therefore, the cases that Plaintiff cites all involved promises for specific services unrelated to the overall educational experience, as opposed to his claims in the Amended Complaint regarding his alleged "subpar" virtual learning experience.

Finally, Plaintiff argues that Fordham acted arbitrarily by returning 50% of most fees it collected for the Spring 2020 Semester but retaining the entirety of tuition and the technology fee. However, as explained above, Fordham in fact continued classes for the remainder of the Spring 2020 Semester, thereby justifying continued tuition. Moreover, the University makes no distinction in tuition rates for online and in-person classes (Kozak Aff. Ex. 10)[5]. Second, in a clearly non-arbitrary fashion, though under no obligation to do so, Fordham elected to return 50% of fees connected to services necessarily limited due to the campus closure. Finally, the technology fee was not returned because the fee continued to be used to support technology expenditures which significantly increased during the remainder of the semester. See Chong 2020 U.S. Dist. LEXIS 181622 at *11 ("Because students pay the student activity fee, the student center fee, and the undergraduate student fee to 'support' certain facilities during terms for which those students are enrolled in classes, i.e., not to gain access to any on-campus facility or resource, plaintiffs have not stated a claim for breach of contract with respect to these fees.").

---

[5] Plaintiff attempts to attach some significance to his claim that Fordham did not offer undergraduate "online" classes during the Spring 2020 Semester, but that does not change the fact that the "online" classes that Fordham offered were charged at the same rate as in-person classes. Thus, there would be no basis for assigning damages for the switch to virtual classes, even if a breach of some contractual commitment to not change modality.

7

### C. Plaintiff's Acceptance Of Virtual Instruction and Course Credit Precludes Him From Voiding His Agreement and Obligation To Pay Tuition.

Plaintiff's contract claim also is barred because he attended the virtual classes that Fordham made available for the Spring 2020 Semester, accepted the credits earned as a result, and matriculated to his senior year. Plaintiff cannot accept the benefits of the entire semester, and thereafter claim breach and seek to terminate the "contract" from March 2020 forward. Sang Lan v. Aol Time Warner, Inc., 2012 U.S. Dist. LEXIS 187899, *9-10 (S.D.N.Y. Apr. 30, 2013) ("Where 'a party has actual knowledge of a breach and continues to perform under and accepts the benefits of the contract, such continuing performance constitutes a waiver of the breach'") quoting National Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 675 (S.D.N.Y. 1991).

Plaintiff attempts to side-step this issue by repeatedly misstating his claim. Contrary to his assertion, Plaintiff is not seeking actual damages. Rather, Plaintiff states repeatedly in his Amended Complaint that he is seeking to avoid paying for the entire portion of the semester that was taught in the virtual modality. See Amended Complaint ¶¶ 63, 70, 77, 88 (seeking "return of the pro-rated portion of any Spring Semester 2020 tuition and fees (or at minimum a portion thereof) for education services not provided since Fordham shut down on March 9, 2020"). However, having accepted the benefits of his contract with Fordham, Plaintiff cannot now seek to void his obligation to pay as he agreed. Fordham's argument is not that Plaintiff waived his breach of contract claim as a result of some delay in his commencement of this lawsuit, but rather, he waived his claim by accepting the virtual instruction offered and course credits obtained.

The case law relied on by Plaintiff fully supports Fordham's argument. Plaintiff relies on the ESPN and Bigda decisions, contending that "New York law is clear that '[w]hen a party materially breaches a contract, the non-breaching party must choose between two remedies—he can elect to terminate the contract and recover liquidated damages or he can continue the contract

8

and recover damages solely for the breach." However, Plaintiff excludes the next sentence in those decisions which state that "[o]nce a party elects to continue the contract, [it] can never thereafter elect to terminate the contract based on that breach, although [it] retains the option of terminating the contract based on other, subsequent breaches." ESPN, Inc. v. Office of Comm'r of Baseball, 76 F. Supp. 2d 383, 387-88 (S.D.N.Y. 1999) (emphasis added); Bigda v. Fischbach Corp., 898 F. Supp. 1004, 1011-12 (S.D.N.Y. 1995).

Here, Plaintiff elected to proceed with the contract by continuing to attend classes and receive course credit toward his degree. By doing so, Plaintiff waived his right to terminate the contract and discharge his obligations thereunder (i.e., to pay tuition). While Plaintiff may still be entitled to seek *actual* damages allegedly caused by the breach (which would be impossible for the court to determine without analyzing each course of instruction and determining whether Fordham's virtual learning was truly "subpar" compared to in-person and on-campus learning, and if so, what the difference in value might be), he does not do that here. Instead, Plaintiff effectively attempts to terminate the contract after-the-fact, by seeking a "return of the pro-rated portion of any Spring Semester 2020 tuition and fees (or at minimum a portion thereof) for education services not provided since Fordham shut down on March 9, 2020." See Amended Complaint ¶¶ 63, 70, 77, 88. However, as the ESPN and Bigda decisions make clear, even if there was a breach of contract by Fordham's transition to virtual learning (which is emphatically denied), because Plaintiff willfully accepted the benefits of continued learning after in-person and on-campus instruction was no longer possible, he may not now terminate his obligations under the contract.[6]

---

[6] Even if Plaintiff's complaint could be construed to argue actual damages (which it does not), this does not absolve Plaintiff of his obligation to plead damages that are not "merely speculative, possible or imaginary." Getko Grp., Inc. v. Amica Mut. Ins. Co., 2003 U.S. Dist. LEXIS 19238, at *6 (S.D.N.Y. Oct. 28, 2003).

9

## II.    PLAINTIFF'S QUASI-CONTRACT CLAIMS MUST BE DISMISSED.

Finally, Plaintiff's quasi-contract claims for unjust enrichment, conversion, and money had and received also must be dismissed because Plaintiff and Fordham have a contractual arrangement that covers the dispute at hand pursuant to both the FRA and the implied agreement that "if the student complies with the terms prescribed by the university, she will obtain the degree she seeks." Gally v. Columbia Univ., 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998). Thus, since Plaintiff's relationship with Fordham is contractual in nature, he is precluded from asserting duplicative quasi-contract claims. See Yalincak v. New York Univ., 2009 U.S. Dist. LEXIS 143913 at *44 (D. Conn. Sept. 3, 2009) ( "[b]ecause Plaintiff and NYU had a contract, he cannot bring an action for unjust enrichment."); W.B. David & Co. v. DWA Commc'ns, Inc., 2004 U.S. Dist. LEXIS 2954, at *16 (S.D.N.Y. Feb. 26, 2004) ("a claim for conversion is deemed redundant, and may be dismissed pursuant to Rule 12(b)(6), where damages are merely being sought for a breach of contract"); Teachers Ins. & Annuity Ass'n v. Wometco Enters., 833 F. Supp. 344, 349 n.9 (S.D.N.Y. 1993) ("no claim for unjust enrichment/money had and received can stand where, as here, a contract covers the same subject matter for which relief is sought").

Plaintiff's reliance on Superintendent of Ins. v. Ochs, 377 F.3d 209 (2d Cir. 2004) for the notion that alleged implied contracts are insufficient to bar a quasi-contract claim fails for multiple reasons. First, the FRA is an express, written contract covering the dispute at issue, not an implied contract. Second, subsequent to Ochs, the Second Circuit held that New York law "precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 587 (2d Cir. 2006).

10

Additionally, Plaintiff's unjust enrichment claim also must be dismissed because Plaintiff does not allege any conduct by Fordham that was "tortious or fraudulent" as is necessary to establish the "equity and good conscious" element of an unjust enrichment claim. See Paramount Film Distrib. Corp. v. State, 30 N.Y.2d 415, 421 (1972); Clark v. Daby, 300 A.D.2d 732, 733 (3d Dept. 2002). Similarly, Plaintiff's conversion claim must be dismissed because Plaintiff does not allege conduct that was "unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." Benex LC v. First Data Much. Servs. Corp., 2016 U.S. Dist. LEXIS 33849, at *15 (E.D.N.Y. Mar. 16, 2016). Moreover, Plaintiff incorrectly argues that his conversion claim is viable because his tuition and fees amount to a "specific identifiable fund". Rather, it is impossible to divide the tuition into identifiable funds that separately cover in-person and on-campus classes through early March and the virtual classes for the remainder of the semester because Fordham charges the same rate for in-person/on-campus and virtual classes. Moreover, the only fee Plaintiff paid which Fordham retained in its entirety was for technology services which Fordham continuously provided throughout the semester and on an enhanced basis for the second part of the semester. Finally, Plaintiff argues that his money "had and received" claim is viable because "[i]t is immaterial [] whether the original possession of the money by the defendant was rightful or wrongful." However, "courts have found that plaintiffs lack the requisite possessory interest in money freely given to a defendant with the expectation of performance." Fernbach, LLC v. Capital & Guarantee Inc., 2009 U.S. Dist. LEXIS 71564, at *13 (S.D.N.Y. Aug. 12, 2009). As Plaintiff freely paid his tuition to Fordham, he cannot assert a viable claim for money had and received.

### III.   ALL FOUR OF PLAINTIFF'S CLAIMS ARE RE-PACKAGED EDUCATIONAL MALPRACTICE CLAIMS.

Finally, Plaintiff goes to great length to argue that his claims do not constitute educational malpractice because, in evaluating his claims, the court will not be required to evaluate a course of instruction. However, the crux of Plaintiff's lawsuit is that he be relieved of any obligation to pay any tuition or fees for the second half of the Spring 2020 Semester because "the online learning options" offered to Fordham students "[were] subpar in practically every aspect." See Amended Complaint ¶¶ 13, 39. Even if his claims were otherwise viable (which they are not), there is no way for the court to assess Plaintiff's contention that his "online learning" experience was somehow "subpar" without evaluating and measuring the alleged quality of educational services provided remotely as compared against in-person/on-campus educational services. This is exactly what an educational malpractice claim is and is exactly what courts seek to avoid. As explained above, Ansari, Deen, Novio, and Adler cannot support Plaintiff's position as they did not allow any portions of claims to survive relating to the alleged quality of the overall educational experience.

Therefore, since, in evaluating Plaintiff's claims, the court would have to "substitute [its] judgement for that of university officials" and "evaluate the course of instruction" Plaintiff's claims must be dismissed as improper attempts to make an end-run around New York courts' refusal to entertain educational malpractice claims.

### CONCLUSION

Based upon the foregoing, Fordham respectfully requests the Court to enter an Order: (1) dismissing Plaintiff's claims against Fordham in their entirety and with prejudice; and (2) awarding Fordham such other and further relief as the Court deems just and proper.

                Respectfully submitted,

                        JACKSON LEWIS P.C.
                        44 South Broadway, 14th Floor
                        White Plains, New York 10601
                        (914) 872-8060

                        200 Connell Drive, Suite 2000
                        Berkeley Heights, NJ   07922
                        (908) 795 5200

              By:    /s/ Jonathan M. Kozak
                      Jonathan M. Kozak
                      Gregory T. Alvarez*
                      Isaac J. Burker
                      Michael J. Nesse*

                      *ATTORNEYS FOR DEFENDANT*

Dated: October 19, 2020
       White Plains, New York

*\* Notice of Appearance to be filed*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

KAREEM HASSAN, individually and on behalf of all others similarly situated,

                                        **Plaintiff,**

               -against-                        Case No.1:20-CV-03265 (LTS) (BCM)

FORDHAM UNIVERSITY,

                                        **Defendant.**

-----------------------------------------------------------------x

## CERTIFICATE OF SERVICE

This is to certify that, on October 19, 2020, a true and correct copy of Defendant's Reply Memorandum Of Law In Support Of Motion To Dismiss has been served via ECF and overnight mail on counsel for Plaintiff at the address of record set forth below:

Philip L. Fraietta, Esq.
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, New York 10019
pfraietta@bursor.com

                                      _____/s/ Jonathan M. Kozak_____
                                           Jonathan M. Kozak